CHARLES G. MILLER (SBN 39272)
   cmiller@bzbm.com
BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile:  (415) 956-1152

JOSHUA S. BAUCHNER *(Pro Hac Vice)*
   jb@ansellgrimm.com
SETH M. ROSENSTEIN *(Pro Hac Vice)*
   smr@ansellgrimm.com
ANSELL GRIMM & AARON, P.C.
365 Rifle Camp Road
Woodland Park, NJ  07424
Telephone: (973) 247-9000
Facsimile:  (973) 247-9199

Attorneys for Defendants
FRANK V. BARONE; KIRILL CHUMENKO;
GREEN POGO LLC (DELAWARE); GREEN
POGO LLC (NEW JERSEY); NATURAL
BEAUTY LINE LLC; VEGAN BEAUTY LLC;
IMPROVED NUTRACEUTICALS LLC;
FORTERA NUTRA SOLUTIONS LLC;
ADVANCED BEAUTY LLC; SFLG INC.; and
KURT ELLIS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CINDY ADAM,<br><br>        Plaintiff,<br><br>        v.<br><br>FRANK V. BARONE; KIRILL CHUMENKO; GREEN POGO LLC (DELAWARE); GREEN POGO LLC (NEW JERSEY); NATURAL BEAUTY LINE LLC; VEGAN BEAUTY LLC; IMPROVED NUTRACEUTICALS LLC; FORTERA NUTRA SOLUTIONS LLC; ADVANCED BEAUTY LLC; SFLG INC.; KURT ELLIS; JOHN DOES 1-10,<br><br>        Defendants. | Case No. 4:20-cv-00761-EMC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b)(1), (2) AND (6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     Thursday, June 11, 2020<br>Time:    1:30 p.m.<br><br>The Hon. Edward M. Chen<br><br><br>Complaint Filed: February 1, 2020<br>Trial Date     None Set |

2783.000/1509906.2

Case No. 4:20-cv-00761-EMC

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on Thursday, June 11, 2020, of the above-referenced Court, at 1:30 p.m., Defendants, specially appearing for that purpose, will and hereby do move, to dismiss for lack of subject matter jurisdiction pursuant to Rule 12 (b)(1).

PLEASE TAKE FURTHER NOTICE THAT Defendants Frank R. Barone, Kirill Chumenko, Green Pogo, LLC (Delaware and New Jersey), Vegan Beauty, LLC, Improved Nutraceuticals, LLC, Fortera Nutra Solutions, LLC, Advanced Beauty, LLC, SFLG, Inc. and Kurt Ellis, will and hereby do move, to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).

PLEASE TAKE FURTHER NOTICE THAT Defendants SFLG, Inc. and Kurt Ellis will and hereby, do move to dismiss for failure to state a claim under Rule 12(b)(6).

PLEASE TAKE FURTHER NOTICE THAT defendants will and hereby, do move to dismiss the claims of the purported nationwide class for failure to state a claim under FRCP 12(b)(6).

Defendants base this motion on the following Memorandum, the supporting declarations of Frank Barone, Kirill Chumenko, and Kurt Ellis, all pleadings on file in this case, and such argument as may be heard by this Court.

DATED: April 30, 2020

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation

By: _____

Charles G. Miller
Attorneys for Defendants FRANK V. BARONE;
KIRILL CHUMENKO; GREEN POGO LLC
(DELAWARE); GREEN POGO LLC (NEW
JERSEY); NATURAL BEAUTY LINE LLC;
VEGAN BEAUTY LLC; IMPROVED
NUTRACEUTICALS LLC; FORTERA NUTRA
SOLUTIONS LLC; ADVANCED BEAUTY
LLC; SFLG INC.; and KURT ELLIS

2783.000/1509906.2

Case No. 4:20-cv-00761-EMC

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  PRELIMINARY STATEMENT ................................................................................1

II.  FACTS .............................................................................................................3

III.  LEGAL STANDARDS ......................................................................................6

    A.  Rule 12(b)(1) .......................................................................................6

    B.  Rule 12(b)(2) .......................................................................................7

    C.  Rule 12(b)(6) .......................................................................................7

IV.  LEGAL ARGUMENT ......................................................................................8

    A.  Dismissal for Lack of Subject Matter Jurisdiction is Appropriate Because There is No Case or Controversy Due to the Offer of a Full Refund to Plaintiff ................................................................................................8

V.  THERE IS NO PERSONAL JURISDICTION OVER ANY DEFENDANT BUT NATURAL BEAUTY ......................................................................................11

    A.  There is No General Jurisdiction Over the Defendants .............................11

    B.  There is No Specific Jurisdiction Over Any Defendant Other Than Natural Beauty ................................................................................................13

        1.  The Individual and Non-Selling Entity Defendants Did Not Direct Activities to California ..........................................................14

        2.  The Individual and Non-Selling Entity Defendants Are Not the Cause of Plaintiff's Alleged Damages ....................................16

        3.  The Exercise of Jurisdiction Would be Unreasonable and Not Comport With Fair Play and Substantial Justice...........................17

        4.  The Individual and Non-Selling Entity Defendants Are Protected By the Fiduciary Shield Doctrine ..............................................19

VI.  PLAINTIFF FAILS TO STATE A CLAIM AGAINST SFLG AND ELLIS ....................20

    A.  SFLG is a Common Carrier ..................................................................20

    B.  Plaintiff Fails to Plead Fraud With Particularity or Plead a Plausible Claim ..........21

VII.  DISMISSAL OF NATIONWIDE CLASS CLAIMS AS THEY PERTAIN TO THE CALIFORNIA CONSUMER PROTECTION STATUTES IS APPROPRIATE AS TO THE NON-CALIFORNIA CLASS MEMBERS.........................................................23

VIII.  CONCLUSION ...........................................................................................24

2783.000/1509906.2                i                 Case No. 4:20-cv-00761-EMC

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arbaugh v. Y&H Corp.*
546 U.S. 500 (2006) ......................................................................................................... 6

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .................................................................................................... 8, 23

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*
223 F.3d 1082 (9th Cir. 2000) ....................................................................................... 16

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ................................................................................................ 7, 8, 23

*Boschetto v. Hansing*
539 F.3d 1011 (9th Cir. 2008) ....................................................................................... 15

*Buckland v. Threshold Enterprises, Ltd.*
155 Cal. App. 4th 798 (2007) ........................................................................................ 10

*Calder v. Jones*
465 U.S. 783 (1984) ................................................................................................. 14, 15

*Callway Golf Corp. v. Royal Canadian Golf Ass'n.*
125 F. Supp. 2d 1194 (9th Cir. 2000) ............................................................................ 18

*Clapper v. Amnesty International USA*
133 S.Ct. 1138 ............................................................................................................... 10

*Colwell v. U.S. Department of Health and Human Services*
558 F.3d 1112 (9th Cir. 2009) ......................................................................................... 6

*Core-Vent Corp. v. Nobel Industries*
11 F.3d 1482 (9th Cir. 1993) .................................................................................... 18, 19

*Data Disc, Inc. v. Systems Technology Associates, Inc.*
557 F.2d 1280 (9th Cir. 1977) ......................................................................................... 7

*Davis v. Metro Prod.*
885 F.2d 515 (9th Cir. 1989) ......................................................................................... 19

*Decker Coal Co. v. Commonwealth Edison Co.*
805 F.2d 834 (9th Cir. 1986) .................................................................................... 7, 14

*Diamler AG v. Bauman*
571 U.S. 117 (2014) ................................................................................................. 11, 12

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*
   2020 WL 1244918 (N.D. Cal. Mar. 16, 2020) ........................................... 11, 12, 13

*Foster v. Carson*
   347 F.3d 742 (9th Cir. 2003) ........................................................................ 8

*Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*
   528 U.S. 167 (2000) ...................................................................................... 2

*Hall v. North American Van Lines, Inc.*
   476 F.3d 683 (9th Cir. 2007) ....................................................................... 21

*Hanson v. Denckla*
   357 .U.S. 235 (1958) ................................................................................... 13

*Haring v. Wells Fargo Bank N.A.*
   2018 WL 10471109 (N.D. Cal. Oct. 17, 2018) ............................................ 17

*Harris Rutsky & Co., Inc. v. Bell & Clements Ltd.*
   328 F.3d 1122 (9th Cir. 2003) ..................................................................... 14

*International Shoe Co. v. Washington*
   326 U.S. 310 (1945) ...................................................................................... 7

*Lindora, LLC v. Isganeix International, LLC*
   198 F. Supp. 3d 1127 (S.D. Cal. 2016) ....................................................... 16

*Live Eyewear, Inc. v. Johnathan Eyewear, Inc.*
   2012 WL 12888525 (C.D. Cal. June 22, 2012) ........................................... 14

*Martinez v. Aero Caribbean*
   764 F.3d 1062 (9th Cir. 2014) ................................................................ 12, 13

*Matsunoki Group, Inc. v. Timberwork Oregon, Inc.*
   2008 WL 5221077 (N.D. Cal. Dec. 12, 2008) ............................................. 16

*Metropolitan Life Ins. v. Neaves*
   912 F.2d 1062 (9th Cir. 1990) ....................................................................... 7

*Micron Technology, Inc. v. United Microelectronics Corporation*
   2019 WL 266518 (N.D. Cal. Jan. 18, 2019) ................................................ 17

*Neubronner v. Milken*
   6 F.3d 666 (9th Cir. 1993) ........................................................................... 22

*Norwest Mortg., Inc. v. Sup.Ct.*
   72 Cal.4th 214 (1999) .................................................................................. 23

*Panavision Int'l v. L.P.v. Toeppa*
   141 F.3d 1316 (9th Cir. 1998) ..................................................................... 16

2783.000/1509906.2                    iii                    Case No. 4:20-cv-00761-EMC

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Ranza v. Nike, Inc.*
    793 F.3d 1059 (9th Cir. 2015)................................................................................ 12, 13

*Ruvalcaba v. City of L.A.*
    167 F.3d 514 (9th Cir. 1999).......................................................................................... 8

*Safe Air for Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004).......................................................................................... 6

*Schwarzenegger v. Fred Martin Motor Co.*
    374 F.3d 797 (9th Cir. 2004)........................................................................................... 14

*Shabani v. Classic Design Servs., Inc.*
    699 F. Supp. 2d 1138 (C.D. Cal. 2010)........................................................................ 20, 21

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001)............................................................................................. 7

*Stewart v. Screen Gems-EMI Music, Inc.*
    81 F. Supp. 3d 938 (N.D. Cal. 2015) ................................................................................ 7

*Tosh-Surryhne v. Abbott Labs. Inc.*
    No. CIV S-10-2603 KJM, 2011 WL 4500880 (E.D. Cal. Sept. 26, 2011) ............................ 8

*Toyz, Inc. v. Wireless Toyz, Inc.*
    2010 WL 334475 (Jan. 25, 2010).................................................................................. 7, 14

*Walden v. Fiore*
    571 U.S. 277 (2014) ....................................................................................................... 13

*Warren v. Fox Family Worldwide, Inc.*
    328 F.3d 1136 (9th Cir. 2003).......................................................................................... 6

*Warth v. Seldin*
    422 U.S. 490 (1975) ....................................................................................................... 10

*Western Min. Council v. Watt*
    643 F.2d 618 (9th Cir. 1981).......................................................................................... 10

*White v. Lee*
    227 F.3d 1214 (9th Cir. 2000).......................................................................................... 6

*White v. Mayflower Transit, LLC*
    481 F. Supp. 2d 1101 (2007)......................................................................................... 21

*White v. Mayflower Transit, LLC*
    543 F.3d 581 (9th Cir. 2008).......................................................................................... 20

*Zatkin v. Primuth*
    551 F. Supp. 39 (S.D. Cal. 1982) .................................................................................. 22

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Ziegler v. Indian River County*
    64 F.3d 470 (9th Cir. 1995) .................................................................. 14, 18, 19

**Court Rules**

FRCP
    Rule 8 ...................................................................................................... 7
    Rule 8(a) ............................................................................................... 7, 8
    Rule 8(a)(2) ............................................................................................. 7
    Rule 9(b) .............................................................................. 3, 21, 22, 23
    Rule 12(b)(1) ................................................................................ 6, 8, 24
    Rule 12(b)(1), (2) and (6) ...................................................................... 1
    Rule 12(b)(2) ............................................................................... *passim*
    Rule 12(b)(6) ...................................................................................... 7, 24
    Rule 12(d) ............................................................................................... 2

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 12(b)(1), (2) and (6), Defendants FRANK V. BARONE ("Barone"); KIRILL CHUMENKO ("Chumenko"); GREEN POGO, LLC (DELAWARE); GREEN POGO, LLC (NEW JERSEY) (collectively "Green Pogo"); NATURAL BEAUTY LINE, LLC ("Natural Beauty"); VEGAN BEAUTY, LLC (Vegan Beauty"); IMPROVED NUTRACEUTICALS, LLC (Improved Nutraceuticals"); FORTERA NUTRA SOLUTIONS, LLC ("Fortera Nutra Solutions"); ADVANCED BEAUTY, LLC ("Advanced Beauty"); SFLG, INC. ("SFLG" and with Green Pogo, Vegan Beauty, Improved Nutraceuticals, Fortera Nutra Solutions, and Advanced Beauty the "Non-Selling Entity Defendants"); and KURT ELLIS ("Ellis" and with Barone and Chumenko the "Individual Defendants" and with Natural Beauty and the Non-Selling Entity Defendants the "Defendants"), respectfully move the Court to dismiss each claim in the Complaint by Plaintiff CINDY ADAM ("Plaintiff").

## I.      PRELIMINARY STATEMENT

Plaintiff has filed a rambling, overbroad 116 page Complaint against a number entities and purported officers relating to her one-time purchase of Nuvega beauty products from Defendant Natural Beauty, and no other.  She seeks to represent a California and nationwide class consisting of thousands of consumers.  Her claims are based on purported violations of the California Legal Remedies Act, the California False Advertising Law, California Unfair Competition Law, the California Automatic Renewal Law, the federal Electronic Fund Transfer Act, and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").  Interspersed amidst the purported unlawful acts to attempt to trigger the unlawful prong of the Unfair Competition Law are a myriad of federal and state statutes ranging from bank fraud[1], wire fraud, mail fraud, violations of the Federal Trade Commission regulations concerning advertising, violations of the California Sherman Food, Drug & Cosmetic Law, the federal Food, Drug & Cosmetic Act, and, lastly, federal law governing negative option marketing on the Internet.

---

[1] Interestingly, the alleged fraud is on the banks, not the plaintiffs, and thus this "unlawful" act caused no damage to plaintiffs.

This plethora of claims arises from plaintiff's response to an Internet ad for certain beauty products purportedly offering free samples with the customer being only responsible for the cost of shipping and handling. (Complaint, docket entry 1, ¶ 42). The plaintiff was eventually charged $92.94 for Nuvega Lash and Evo Beauty products, together with a shipping charge of $24.93. (Complaint ¶ 50). Customers are only charged for the product if they do not return the product or request a refund within 14 days. (Complaint ¶ 72). Plaintiff claims that she contacted the company to complain about the ***fully disclosed***, yet somehow "unexpected charges," and was advised that: "The representative [of Nuvega Lash] refused to issue an immediate refund, and instead demanded that Ms. Adam ship the products back before the company would consider issuing one." (Complaint ¶¶ 52-53, p. 15, ll.26 28 & ¶¶ 72-73 (disclosing charges)). She then alleges she did not do so because she did "not trust the company." (Complaint ¶ 53).

According to Defendant Natural Beauty company records, which may be considered pursuant to Rule 12(d), plaintiff refused to return the product in order to get a refund.

> On 9/7/17 the customer called into our customer care department and spoke to a rep where the terms and conditions were reiterated. The customer requested to cancel out of the program and the customer declined opting for the return information and subsequent refund.

*See* Declaration of Frank Barone ("Barone Decl."), **Exhibit A**. Thus, Plaintiff's claims fail as a matter of law because there is not an actual case or controversy precluding standing under Article III of the United States Constitution because she was offered a full refund for all of her alleged damages but she inexplicably declined solely to fabricate a dispute. *See Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 180-81 (2000). Had Plaintiff simply accepted the full refund—which was offered long before the specter of litigation—the matter would be resolved.

Furthermore, Plaintiff alleges in a wholly conclusory manner that ***all*** of the Defendants are subject to specific jurisdiction "because Defendants are authorized to conduct and do business in California" and that Defendants have sufficient contacts with California. However, she wholly fails to meet her burden of establishing personal jurisdiction over the Individual Defendants or the Non-Selling Entity Defendants because Natural Beauty was the ***only*** defendant who engaged in

any of the allegedly tortious conduct or had a business relationship with Plaintiff. To accept Plaintiff's argument would not only run contrary to controlling precedent in this Circuit, but it would also unconstitutionally extend the exercise of personal jurisdiction over individuals and unrelated entities whose contacts with California—if any—are completely unrelated from the conduct giving rise to the claims in the litigation. Such a finding would destroy the traditional notions of fair play and substantial justice required to satisfy constitutional due process requirements, compelling dismissal of the Complaint as to them with prejudice, pursuant to Rule 12(b)(2).

Additionally, Plaintiff improperly seeks to assert common and state law claims against SFLG—and its improperly named owner Ellis—which merely acted as a common carrier by shipping products. It is well settled that the Carmack Amendment operates to preclude all of Plaintiff's claims against SFLG and Ellis because their only involvement with this transaction was the shipment of products and the Carmack Amendment completely pre-empts any claims arising out of a common carrier's shipment of goods. Furthermore, Plaintiff's fraud claims as pled against SFLG and Ellis do not contain the required specificity necessary to support those claims. Fed. R. Civ. P. 9(b). Specifically, Plaintiff merely contends on "information and belief" that SLFG and Ellis are somehow connected to the remaining Defendants and are assisting Natural Beauty's "scheme" without pleading a single fact to support those specious allegations. Indeed, Plaintiff did not plead any facts to support these claims because she cannot; SLFG merely mailed the products to Plaintiff while acting as a common carrier and has absolutely no involvement with the sale and marketing of the products.

Lastly, the California claims cannot be brought on behalf of non-residents and the claims of the nationwide class members under the California statutes must be dismissed as a matter of law because those statutes do not apply to non-residents.

## II.    FACTS

Barone and Chumenko reside exclusively in New Jersey and do not own any property in California, nor have they ever resided in California. *See* Barone Decl. ¶ 2 and Declaration of Kirill Chumenko ("Chumenko Decl.") ¶ 2. Ellis resides exclusively in Maine and does not own

any property in California, nor has he ever resided in California. Declaration of Kurt Ellis ("Ellis Decl.") ¶ 2. None of the Individual Defendants personally conduct any business in California. *See* Barone Decl. ¶ 3, Chumenko Decl. ¶ 3, and Ellis Decl. ¶ 3. None of the Individual Defendants personally generate any income in California nor do they have a bank account in California. *See* Barone Decl. ¶ 4, Chumenko Decl. ¶ 4, and Ellis Decl. ¶ 4.

None of the Non-Selling Entity Defendants are organized under the laws of the State of California nor do any of them have a business address in California. *See* Barone Decl. ¶ 6, Chumenko Decl. ¶ 6, and Ellis Decl. ¶ 6. The Non-Selling Entity Defendants are not registered to do business in the State of California. *See* Barone Decl. ¶ 7, Chumenko Decl. ¶ 7, and Ellis Decl. ¶ 7. All of the employees of Defendants are located in New Jersey, with SFLG having no employees.. *See* Barone Decl. ¶ 8, Chumenko Decl. ¶ 8, and Ellis Decl. ¶ 8.

Ellis does not have an ownership interest in Natural Beauty or in the Non-Selling Entity Defendants, other than SFLG, nor is he a manager, director, officer, executive, employee, agent, or representatives of Natural Beauty or the Non-Selling Entity Defendants other than SFLG. *See* Barone Decl. ¶ 9, Chumenko Decl. ¶ 9, and Ellis Decl. ¶ 5. Barone and Chumenko do not have an ownership interest in SFLG nor are they managers, directors, officers, executives, employees, agents, or representatives of SFLG. Ellis Decl. ¶ 9. None of the Non-Selling Entity Defendants are a parent, subsidiary, or affiliated company of Natural Beauty. *See* Barone Decl. ¶ 10, Chumenko Decl. ¶ 10, and Ellis Decl. ¶ 10. The only relationship between SFLG and Natural Beauty is an arms' length business relationship permitting Natural Beauty to use SFLG's common carrier services to ship products. *See* Barone Decl. ¶ 11, Chumenko Decl. ¶ 11, and Ellis Decl. ¶ 19. At the time of the filing the Complaint, none of the Non-Selling Entity Defendants advertised any products or services for sale in California. *See* Barone Decl. ¶12 and Chumenko Decl. ¶ 12. At the time of the filing of the Complaint, none of the Non-Selling Entity Defendants sold any products or services in California. *See* Barone Decl. ¶13 and Chumenko Decl. ¶ 13.

To the extent that any of Green Pogo, Vegan Beauty, Improved Nutraceuticals, Fortera Nutra Solutions, and Advanced Beauty ever sold or advertised any products or services in California, the advertisements and sales were sporadic, not specifically directed to California, and

comprised only a miniscule portion of their total sales.  *See* Barone Decl. ¶14 and Chumenko Decl. ¶ 14.  Furthermore, Fortera Nutra Solutions never advertised or sold the products identified in the Complaint nor has it ever billed any customers for the products identified in the Complaint.  *See* Barone Decl. ¶15 and Chumenko Decl. ¶ 15.

SFLG does not advertise or sell any products.  *See* Ellis Decl. ¶ 11.  SFLG was merely a common carrier similar to UPS, FedEx, or the United States Postal Service, which simply distributed products on behalf of its customers to consumers.  *See* Ellis Decl. ¶ 12.  SFLG does not control the method and means of marketing or sale of any products.  *See* Ellis Decl. ¶ 13.  Once one of SFLG customers made a sale to a consumer, the customer informed SFLG who shipped the products to that consumer.  *See* Ellis Decl. ¶ 14.  SFLG does not maintain a distribution center or any other physical presence in California.  *See* Ellis Decl. ¶ 15.  SFLG never directly billed consumers for the sale of any products and derived all of its revenue from the shipping and handling of products to consumers.   *See* Ellis Decl. ¶ 16.  SFLG does not have any customers located in California who market and sell products to consumers.  *See* Ellis Decl. ¶ 17.  SFLG estimates that less than 5% of the products it shipped were shipped to California on behalf of its corporate customers.  *See* Ellis Decl. ¶ 18.

Natural Beauty is the only entity who advertised any products identified in the Complaint to Plaintiff, entered into any agreements with Plaintiff for the sale of products, billed Plaintiff for the sale of products, collected money from Plaintiff for the sale of products, and corresponded with Plaintiff regarding any of the products.  *See* Barone Decl. ¶ 16, Chumenko Decl. ¶ 16, and Ellis Decl. ¶ 20.  For the avoidance of any doubt, the Non-Selling Entity Defendants had absolutely no involvement whatsoever with the sale of products to Plaintiff.  *See* Barone Decl. ¶ 17, Chumenko Decl. ¶ 17, and Ellis Decl. ¶ 20.

On September 7, 2017, Plaintiff contacted Natural Beauty seeking to cancel her subscription for the products identified in the Complaint.  *See* Barone Decl. ¶ 18 and Chumenko Decl. ¶ 18.  Natural Beauty agreed to cancel her subscription immediately.  *See* Barone Decl. ¶19 and Chumenko Decl. ¶ 19.  Natural Beauty offered Plaintiff a full refund for all of the products purchased from Plaintiff, including the $92.94 charge at issue in this litigation.  *See* Barone Decl.

¶ 20 and Chumenko Decl. ¶ 20.  Plaintiff declined Natural Beauty's offer of a full refund.  *See* Barone Decl. ¶ 21 and Chumenko Decl. ¶ 21.  Plaintiff never returned any of the products she received and, presumably, retains use and possession of the products to this day.  *See* Barone Decl. ¶ 22 and Chumenko Decl. ¶ 22.  Natural Beauty's business records of Plaintiff's transaction contain the following notation for September 17, 2017:

> On 9/7/17 the customer called into our customer care department and spoke to a rep where the terms and conditions were reiterated. The customer requested to cancel out of the program and the customer declined opting for the return information and subsequent refund.

*See* Barone Decl., **Exhibit A**.

Defendants will suffer a tremendous financial burden if they are forced to defend this action in California.  *See* Barone Decl. ¶ 24, Chumenko Decl. ¶ 23, and Ellis Decl. ¶ 21.

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

The plaintiff bears the burden of establishing subject matter jurisdiction and "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006). "[S]tanding and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedures 12(b)(1)…" *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Evidence outside the pleadings can be submitted on a Rule 12(b)(1) motion to establish the existence or lack of subject matter jurisdiction. *See, e.g., Colwell v. U.S. Department of Health and Human Services*, 558 F.3d 1112, 1121 (9th Cir. 2009); *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, the Court "need not presume the truthfulness of plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.*

2783.000/1509906.2

6

Case No. 4:20-cv-00761-EMC

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## B. Rule 12(b)(2)

"When a nonresident defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction is proper." *Toyz, Inc. v. Wireless Toyz, I*nc., 2010 WL 334475, at *6 (Jan. 25, 2010) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986)). "In the context of a motion to dismiss based upon pleadings and affidavits, the plaintiff may meet this burden by making a prima facie showing of personal jurisdiction." *Id.* (citing *Metropolitan Life Ins. v. Neaves*, 912 F.2d 1062, 1064 n. 1 (9th Cir. 1990); *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). "When adjudicating a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(2), a court may consider extrinsic evidence—that is, materials outside the pleadings, including affidavits submitted by the parties." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 951 (N.D. Cal. 2015).

A federal district court sitting in California may exercise personal jurisdiction over a nonresident defendant only if the defendant has "minimum contacts" with California such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Data Disc*, 557 F.2d at 1287 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

## C. Rule 12(b)(6)

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); (citing Fed. R. Civ. P. 8(a)(2)). To satisfy the requirements set forth under Rule 8 and survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A court must accept as true all facts pled in a complaint for purposes of a motion to dismiss. However, courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State*

*Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The Supreme Court has said:  "[t]he pleading

standard Rule 8 announces does not require 'detailed factual allegations' but it demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009).  Thus, the pleading standard, as set forth by the Supreme Court, requires that judges

utilize their "judicial experience and common sense" to determine whether a claimant has set forth

facts sufficient to "nudge[] [their] claims" . . . "across the line from conceivable to plausible." *Id.*

at 680 (citing *Twombly*, 550 U.S. at 570).

## IV.   LEGAL ARGUMENT

### A.   Dismissal for Lack of Subject Matter Jurisdiction is Appropriate Because There is No Case or Controversy Due to the Offer of a Full Refund to Plaintiff

Federal Rule 12(b)(1) allows a party to move for the dismissal of a claim based on lack of

subject matter jurisdiction.  Subject matter jurisdiction is lacking where there is no longer any case

or controversy, *i.e.*, when the case is moot.  *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 521 (9th Cir.

1999).  An offer from a defendant for a full refund will create a lack of subject matter jurisdiction

by nullifying the plaintiff's claim for relief with the court.  *See Foster v. Carson*, 347 F.3d 742,

745 (9th Cir. 2003) (quoting *Ruvalcaba, supra*:  "If there is no longer a possibility that [a party]

can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction.").

In *Tosh-Surryhne v. Abbott Labs. Inc.*, No. CIV S-10-2603 KJM, 2011 WL 4500880 (E.D.

Cal. Sept. 26, 2011), Abbott, the maker of Similac infant formula, argued that its "offer of a refund

[to the plaintiff] moots any restitution claim a purchaser of recalled Similac might have had,

regardless of whether that purchaser accepts the refund," because Abbott claimed to have

effectively offered to satisfy the plaintiff's demands without the need for litigation.  *Id.* at *1.

Abbott submitted extrinsic evidence that it had announced both a recall and offers of full

refund prior to the filing of the plaintiff's suit along with examples of reimbursement checks and

coupons for money off of future purchases to customers in exchange for proof of purchase of the

recalled product. *Id.* at *4.  The plaintiff declined this full reimbursement, despite having proof of

purchase for at least some of her purchases. The Court held (at *4-5):

The Ninth Circuit has found that one of the principal means by which a claim becomes moot is where "an opposing party has agreed to everything the other party has demanded." GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc., —— F.3d ——, 2011 WL 1613152, at *6 (9th Cir.2011) (citing Spencer-Lugo v. INS, 548 F.2d 870, 870 (9th Cir.1977)). In addition, "[w]hen a defendant offers to make plaintiffs whole, '[t]hat tender end[s] any dispute over restitution ....'" Vavak v. Abbott Labs., Inc., No. SACV 10–1995 JVS (RZx), at *5 (C.D. Cal. June 17, 2011) (citing Gates v. City of Chicago, 623 F.3d 389, 413 (7th Cir.2010)). In other words, if a plaintiff seeks only restitution, which had been offered her before the claim was brought, there can be no claim; rather, any claim brought at that point is an unnecessary call upon this court's resources.

* * *

Accordingly, if defendant has agreed to give plaintiff all that plaintiff demands in damages for defendant's adulterated baby food formula, this case is moot and the court is divested of its subject matter jurisdiction.

Here, plaintiff's claim of injury is summed up in paragraph 442 of the complaint—which applies to all claims—as essentially purchasing overpriced and misrepresented products:

Plaintiff and the Class were harmed by the wrongful conducted committed by the Conspirators as part of the conspiracy, as described throughout this Complaint in the Causes of Action underlying the Conspiracy claim. As a direct and proximate result of the Conspirators' wrongful conduct, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property, time, and attention. In reasonable reliance on the Conspirators' misrepresentations, Plaintiff and other Class Members purchased the products at issue and paid more for those products than they otherwise would have. In turn, Plaintiff and other Class Members ended up with Products that were overpriced, inaccurately marketed, and did not have the characteristics, qualities, or value promised by Defendants, and therefore Plaintiff and other Class Members have suffered injury in fact. Defendant's representations were material to the decision of Plaintiffs and the Class Members to purchase Defendant's products, and a reasonable person would have attached importance to the truth or falsity of the representations made by Defendant in determining whether to purchase Defendant's products.

Clearly, if plaintiff were to receive a ***full refund of the price she paid***, her claims would become moot. The only monetary damage allegedly suffered by Plaintiff was a $92.94 charge which Plaintiff ***admits*** that Defendant offered to refund.[2] *See* Complaint ¶¶ 47 and 53. Plaintiff

---

[2] Plaintiff admits that she purchased a $15.00 product and does not dispute the charges for shipping for the products. *See* Complaint ¶¶ 44-45. Plaintiff admits that it was disclosed she would be charged $4.95 and $4.99 for shipping for the products. *See* Complaint ¶¶ 63, 65, 76, and 88-89.

inexplicably chose to reject the refund and refused to return the products—presumably to create a controversy to sustain the instant class action litigation.[3]  *See* Complaint ¶ 53.  The offer of a refund has the same effect.  Once requested by Plaintiff, Natural Beauty immediately cancelled Plaintiff's subscription for the products and offered her a full refund for the $92.94 charge which Plaintiff rejected.  *See* Barone Decl. ¶¶ 19-21 and Chumenko Decl. ¶¶ 19-21.  Plaintiff's rejection of the refund is nothing more than a transparent attempt to manufacture subject matter jurisdiction when none would otherwise exist.  *See Buckland v. Threshold Enterprises, Ltd*. 155 Cal. App. 4th 798, 814 (2007) (the mere purchase of a product for the purpose of establishing standing to sue is not "injury in fact" or "loss of money or property" within the meaning of the Unfair Competition Law).

The only other "damage" alleged by Plaintiff is that she successfully convinced her bank to reverse a $34.00 insufficient funds charge from 2017, but that her bank only permits her to "remove one insufficient funds charge per year without cause" and thus she was damaged because "it forced her to exhaust that privilege for a charge she never should [have] incurred."  *See* Complaint ¶ 48.  As an initial matter, the allegation that Plaintiff had insufficient funds to satisfy a transaction in which she knowingly and willing engaged is not an injury caused by any of the Defendants, but is of her own making.  *See Clapper v. Amnesty International USA*, 133 S.Ct. 1138, 1151 (holding that "respondents cannot manufacture standing merely by inflicting harm on themselves…"); *see also Western Min. Council v. Watt*, 643 F.2d 618, 626 (9th Cir. 1981) (standing cannot be created by ;plaintiff's own error).  Additionally, this does not amount to the type of injury to establish standing without any showing that she was actually later denied a credit by her bank.  To establish standing under Article III, it is necessary for her establish a "distinct and palpable injury."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Here, she has not alleged any injury whatsoever, only a hypothetical of something that did not come to fruition, thus foreclosing the possibility that this alleged "injury" could sustain her claims.

---

[3] Plaintiff speciously contends she would not have received the refund even if she agreed, which is nothing more than pure speculation designed to resuscitate her clearly barred claims.  *See* Complaint ¶ 54.

1    **V.    THERE IS NO PERSONAL JURISDICTION OVER ANY DEFENDANT BUT
2           NATURAL BEAUTY**

3           Federal Rule 12(b)(2) allows a party to move for the dismissal of a claim based on lack of

4    personal jurisdiction.  For the reasons set forth below, this Court cannot exercise either general or

5    specific jurisdiction over the Individual Defendants or Non-Selling Entity Defendants, thus the

6    Court must dismiss them from this action with prejudice.

7           **A.    There is No General Jurisdiction Over the Defendants**

8           "The paradigm for the exercise of general jurisdiction over a corporation are the place of

9    incorporation and the principal place of business, and only in an "exceptional case" will general

10   jurisdiction be available elsewhere."  *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, 2020

11   WL 1244918, *2 (N.D. Cal. Mar. 16, 2020).  "A corporation will primarily be 'at home' for the

12   purposes of general jurisdiction in two paradigmatic forums: its place of incorporation and its

13   principal place of business.  *Five Star*, 2020 WL 1244918, *3 (citing *Diamler AG v. Bauman*, 571

14   U.S. 117, 137 (2014)).  Barring a showing of those two forums, general jurisdiction is only

15   appropriate in an "exceptional case" where the defendant's affiliations with the forum are "so

16   substantial and of such nature as to render the corporation at home."  *Five Star*, 2020 WL 1244918

17   at *3 (citing *Diamler AG*, 571 U.S. at 138, n.19).

18          Here, there can be no dispute that none of the Defendants are incorporated in California,

19   have their principal place of business in California, or, in the case of the Individual Defendants,

20   live in California or maintain a residence in California.  *See* Barone Decl. ¶¶ 2-4 and 6-7,

21   Chumenko Decl. ¶¶ 2-4 and 6-7, and Ellis Decl. ¶¶ 2-4 and 6-7.  Therefore, the only way that

22   California could exercise general jurisdiction over the Defendants would be if this were an

23   "exceptional case" wherein the Defendants had substantial contacts with California such that it

24   would not offend traditional notions of fair play and substantial justice to call them "at home" in

25   California.

26          "[A] court may assert general jurisdiction over foreign (sister-state or foreign-country)

27   corporations to hear any and all claims against them when their affiliations with the State are so

28   'continuous and systematic' as to render them essentially at home in the forum State."  *Diamler*

*AG*, 571 U.S. at 127.  When assessing whether general jurisdiction exists, Court should examine a corporation's activities worldwide—not just the extent of its contacts in the forum state—to determine where it can rightly be considered at home."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).  "A corporation that operates in many places can scarcely be deemed at home in all of them[, o]therwise, 'at home' would be synonymous with 'doing business…'"  *Diamler AG*, 571 U.S. at 139, n.20.

Here, none of the Defendants have the type of "continuous and systematic" contacts necessary for the Court to exercise general jurisdiction.  The Individual Defendants personally conduct absolutely no business in California, do not generate any personal income from California, and do not maintain a bank account in California.  *See* Barone Decl. ¶¶ 3-4, Chumenko Decl. ¶¶ 3-4, and Ellis Decl. ¶¶ 3-4.  The Non-Selling Entities do not have any employees in California and did not sell any products or services in California at the time of filing of the Complaint, and, whenever the Non-Selling Entities did sell or advertise products in California at times prior to the filing the Complaint, the advertisements and sales were sporadic, not specifically targeted to California, and only made up a small portion of the Non-Selling Entities' total sales.  *See* Barone Decl. ¶¶ 8 and 13-14 and Chumenko Decl. ¶¶ 8 and 13-14.  SFLG has no employees, does not have any customers located in California who retail their products, does not have a distribution center in California, and ships less than 5% of its total product volume to California.  *See* Ellis Decl. ¶¶ 8, 15, and 17-18.  Plainly, none of the Defendants can be subject to California's general jurisdiction.

A number of cases found much more sustained contacts with California insufficient to provide for general jurisdiction.  In *Five Star*, the Court found that regularly sending employees to California and generating substantial revenue from California were not sufficient to establish general jurisdiction over Defendant.  *Five Star*, 2020 WL 1244918 at *3.  Two cases illustrate the contours of this requirement.  In *Ranza*, the Ninth Circuit held that general jurisdiction did not lie where the defendant sent employees on an average of 47 trips per month to the forum state and also maintained approximately twenty to thirty full time employees in the forum state because this made up only a small piece of defendant's full time business.  793 F.3d 1069.  In *Martinez v. Aero*

*Caribbean*, the Court concluded that it could not exercise general jurisdiction over a defendant that did not have office, staff, or other physical presence in California, and was not licensed to do business in California, but did have contracts worth between $225 and $450 million to sell airplanes in California, contracts with 11 California component suppliers, and regularly advertised in California, including sending employees to California to advertise products. 764 F.3d 1062, 1070 (9th Cir. 2014).

Here, Defendants have far less contact with California than the defendants in *Five Star*, *Ranza*, and *Martinez*, all of which declined to find general jurisdiction. Therefore, there is no question that general jurisdiction cannot be sustained against any of the Defendants.

**B.** **There is No Specific Jurisdiction Over Any Defendant Other Than Natural Beauty**

Because it is clear that general jurisdiction is inappropriate in this case, Plaintiff must demonstrate that specific jurisdiction exists against all Defendants in order to maintain claims against them in California. "In the absence of general jurisdiction, a court may exercise specific jurisdiction over a defendant if its less-substantial contacts with the forum give rise to the claim or claims pending before the court—that is, if the cause of action 'arises out of' or has a substantial connection with that activity." *Five Star*, 2020 WL 1244918 at *3 (citing *Hanson v. Denckla*, 357 .U.S. 235, 250-53 (1958)). The inquiry into whether a forum state may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Id.* citing (*Walden v. Fiore*, 571 U.S. 277, 283-284 (2014)).

A Court may subject a defendant to specific jurisdiction if the defendant's contacts with the forum satisfy the following three-prong test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2). the claim must be one which arises out of or relates to the defendant's forum related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

2783.000/1509906.2

13

Case No. 4:20-cv-00761-EMC

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   *Toyz*, 2010 WL 334475 at *6 (quoting *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797,

2   802 (9th Cir. 2004)).

### 1.   The Individual and Non-Selling Entity Defendants Did Not Direct Activities to California

5   As for the first prong, Plaintiff must establish purposeful availment of, or purposeful

6   direction toward, the forum state.  *See Toyz*, WL 334475 at *6 (*citing Decker Coal Co.*, 805 F.2d

7   at 839).  These are two distinct concepts.  *See Schwarzenegger*, 374 F.3d at 802.  "Demonstration

8   of purposeful direction 'usually consists of the defendant's actions outside the forum state that are

9   directed at the forum...'"  *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995) (*citing

10  Schwarzenegger*, 374 F.3d at 803).  "A court evaluated purposeful direction under the three-part

11  'effects' test established in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984),

12  requiring 'that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed

13  at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

14  state.'"  *Id*. (quoting *Schwarzenegger*, 374 F.3d at 803).

15  Here, Plaintiff offers only a boilerplate—and, consequently, meaningless—statement in

16  her Complaint:

> This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do business in California, including this District.  Defendants marketed, promoted, distributed, and sold their products in California, and Defendants have minimum contacts with this State and/or sufficiently availed themselves of the markets in this State through their promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible.  As described in further detail herein, each Defendant purposely directed their conduct towards California residents.

22  *See* Complaint ¶ 5.  This statement alone does not satisfy the *Calder* test.

23  First, Plaintiff has made a blanket, conclusory statement as to **all Defendants**, failing to

24  distinguish between the individual defendants and the entity defendants—let alone each defendant

25  individually as is required for a personal jurisdiction analysis.  *See Harris Rutsky & Co., Inc. v.

26  Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003) ("[p]ersonal jurisdiction over each

27  defendant must be analyzed separately"); *Calder*, 465 U.S. 783, 790 (1984) ("[e]ach defendant's

28  contacts with the forum State must be assessed individually"); *Live Eyewear, Inc. v. Johnathan

2783.000/1509906.2          14          Case No. 4:20-cv-00761-EMC

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Eyewear, Inc.*, 2012 WL 12888525, at *2–3 (C.D. Cal. June 22, 2012) (holding that collective allegations run afoul of Calder because they are "insufficiently particular" to determine each defendant's contacts with the forum). Precise pleading is particularly pertinent in this case because Natural Beauty was the ***only Defendant*** which had any involvement with the sale of the products to Plaintiff. *See* Barone Decl. ¶¶ 16-17, Chumenko Decl. ¶¶ 16-17, and Ellis Decl. ¶ 20. Plainly, this conclusory allegation does not satisfy Plaintiff's burden to establish specific jurisdiction for out-of-State Defendants located clear across the country.

Second, the Individual and Non-Selling Entity Defendants did not commit any acts expressly aimed at California. Specifically, Barone, Chumenko, and the Non-Selling Entities did not conduct ***any*** business in California at the time of filing the Complaint, including advertising or selling products. *See* Barone Decl. ¶¶ 3-4 and 12-13 and Chumenko Decl. ¶¶ 3-4 and 12-13. However, even to the extent that some of the Non-Selling Entities may have sold or advertised the products in question in the past, any advertisements were not specifically directed towards California, with sporadic sales to California only comprising a miniscule portion of the Non-Selling Entities' income. *See* Barone Decl. ¶¶ 12-14 and Chumenko Decl. ¶¶ 12-14. Furthermore, Ellis does not conduct any business in California personally, while SFLG merely shipped a small portion of products to California to while acting as a common carrier—in other words, SFLG never engages in any sales transactions in California nor derives any revenue directly from California. *See* Ellis Decl. 16-18. These types of limited sales transactions have been held in California to not satisfy the first two prongs for the *Calder* test. *See, e.g., Boschetto v. Hansing*, 539 F.3d 1011, 1014-16 (9th Cir. 2008) (holding that advertising and sale of one vehicle over the internet with the seller residing out of state but shipping the vehicle to California does not establish personal jurisdiction). Therefore, the Individual and Non-Selling Entity Defendants simply do not have the requisite minimum contracts with California to have "purposefully directed" any conduct towards the State.

Finally, the Individual and Non-Selling Entity Defendants cannot be found to have "caused harm" in California because Natural Beauty is the only Defendant which operates the website from which the free samples were ordered and sells the products. While the other Defendants may

2783.000/1509906.2

15

Case No. 4:20-cv-00761-EMC

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1 sell limited products or services in California, those Defendants cannot be subject to specific

2 jurisdiction because they did not sell anything to Plaintiff. Specifically, Natural Beauty is the only

3 entity who advertised any products identified in the Complaint to Plaintiff, entered into any

4 agreements with Plaintiff for the sale of products, billed Plaintiff for the sale of products, collected

5 money from Plaintiff for the sale of products, and corresponded with Plaintiff regarding the

6 products. *See* Barone Decl. ¶ 16 and Chumenko Decl. ¶ 16. In other words, none of the

7 Individual or Non-Selling Entity Defendants had any involvement whatsoever with the sale of

8 products to Plaintiff foreclosing the assertion of personal jurisdiction over them. *See* Barone Decl.

9 ¶ 17, Chumenko Decl. ¶ 17, and Ellis Decl. ¶ 20.

10       Accordingly, as all of Plaintiff's alleged "damages" result from the sale and billing for the

11 products, even if the Court finds that any of the Individual or Non-Selling Entity Defendants

12 committed acts aimed at California, those acts were not the cause of any harm to Plaintiff and thus

13 cannot be utilized to sustain specific jurisdiction against those Defendants.

14            **2.**       **The Individual and Non-Selling Entity Defendants Are Not the Cause of Plaintiff's Alleged Damages**

15

16       "[A] claim arises out of a defendant's conduct if the claim would not have arisen 'but for'

17 the defendant's forum-related contacts." *Matsunoki Group, Inc. v. Timberwork Oregon, Inc.*,

18 2008 WL 5221077, *3 (N.D. Cal. Dec. 12, 2008) (citing *Panavision Int'l v. L.P.v. Toeppa*, 141

19 F.3d 1316, 1322 (9th Cir. 1998). In other words, this prong is meant to establish that "the contacts

20 constituting purposeful direction are the contacts giving rise to the suit." *Lindora, LLC v. Isganeix*

21 *International, LLC*, 198 F. Supp. 3d 1127, 1142 (S.D. Cal. 2016) (citing *Bancroft & Masters, Inc.*

22 *v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000)).

23       Here, as set forth above, Natural Beauty was the only entity which advertised any products

24 identified in the Complaint to Plaintiff, entered into any agreements with Plaintiff for the sale of

25 any products, billed Plaintiff for the sale of any products, collected any money from Plaintiff for

26 the sale of any products, and corresponded with Plaintiff regarding any of the products. *See*

27 Barone Decl. ¶ 16 and Chumenko Decl. ¶ 16. In other words, none of the Individual or Non-

28 Selling Entity Defendants had any involvement whatsoever with the sale of products to Plaintiff.

2783.000/1509906.2           16           Case No. 4:20-cv-00761-EMC
NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

See Barone Decl. ¶ 17, Chumenko Decl. ¶ 17, and Ellis Decl. ¶ 20. Therefore, Natural Beauty is the only Defendant who actually could have caused any damage to Plaintiff (although, in light of the offer of a full refund, did not cause any damage, *see supra* § I). Thus, even if the Individual or Non-Selling Entity Defendants are found to have conducted some activity purposefully directed towards California, that activity was not directed to Plaintiff and did not cause any damage to Plaintiff precluding the assertion of personal jurisdiction over them.

Courts do not hesitate to find specific jurisdiction wanting in circumstances such as these where a defendant's activities are completely untethered from the harm alleged by the plaintiff. *See Micron Technology, Inc. v. United Microelectronics Corporation*, 2019 WL 266518, *2-3 (N.D. Cal. Jan. 18, 2019) (dismissing claims for lack of jurisdiction when activities in forum state were unrelated to the harm alleged by plaintiff). Furthermore, Plaintiff's desperate attempt to contend that jurisdiction is appropriate as to other Defendants besides Natural Beauty because other consumers **may** have bought the products from those entities and **may** have been harmed fails as well because there must be an injury suffered by Plaintiff to confer specific jurisdiction. *See* Complaint ¶¶ 5, 12, and 195; *see also Haring v. Wells Fargo Bank N.A.*, 2018 WL 10471109, *5 (N.D. Cal. Oct. 17, 2018) (holding that Wells Fargo's status as a defendant in similar class actions is California did not demonstrate that it took action to cause damage to plaintiff in California).

Simply put, as Natural Beauty was the only party who engaged in any relationship whatsoever with Plaintiff, the remaining Defendants cannot be subject to this Court's jurisdiction.

### 3. The Exercise of Jurisdiction Would be Unreasonable and Not Comport With Fair Play and Substantial Justice

In the remarkable event that Plaintiff's threadbare, demonstrably false contentions are sufficient to satisfy prongs one and two of the specific jurisdiction analysis, the Court should still decline to exercise personal jurisdiction over the Individual and Non-Selling Entity Defendants because it would be unreasonable and not comport with fair play and substantial justice.

The Ninth Circuit examines seven factors to determine whether the exercise of jurisdiction comports with fair play and substantial justice: "(1) the extent of the [defendant's] purposeful

interjection into the forum state's affairs; (2) the burden on the defendant of defending the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternate forum."). *Callway Golf Corp. v. Royal Canadian Golf Ass'n.*, 125 F. Supp. 2d 1194, 1205 (9th Cir. 2000).

As to the first factor, even if the Court finds sufficient activity to satisfy the purposeful direction prong, "the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction…" *Core-Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1488 (9th Cir. 1993). Here, as noted in Section II(B)(i), *supra*, the Individual and Non-Selling Entity Defendants either have no contact with California whatsoever or, in the alternative, have such minimal, attenuated contact with the forum that it would be unreasonable to expect all of those individuals and entities to be subject to suit in a forum across the country.

Where the burden on the defendant and plaintiff are "equal, [the second factor] tips in favor of the defendant because the law of personal jurisdiction is primarily concerned with the defendant's burden." *Ziegler*, 64 F.3d at 475. Here, the financial burden on the Individual and Non-Selling Entities to litigate in California is substantial because they have no presence in the State and cannot reasonably be compelled to defend in a forum clear across the country. *See* Barone Decl. ¶ 24, Chumenko Decl. ¶ 23, and Ellis Decl. ¶ 21. Further, unlike Plaintiff and Natural Beauty, they were not parties to the subject transaction and thus would incur substantial costs to litigate in a forum for claims they have nothing to do with. Thus, the second factor squarely tips in favor of Defendants.

For the fifth factor, the Ninth Circuit "look[s] primarily at where the witnesses and evidence are likely to be located." *Core-Vent*, 11 F.3d at 1489. Here, all of Defendants' operations are located in either New Jersey or Maine. *See* Barone Decl. ¶¶ 2 and 8, Chumenko Decl. ¶¶ 2 and 8, and Decl. ¶¶ 2 and 8. Therefore all of Defendants' documents and party witnesses – of which there are likely to be many more than Plaintiff – reside in an alternative forum where it would be more appropriate to litigate Plaintiff's claims.

As to the sixth factor, while it may be more convenient for Plaintiff to litigation in California, "neither the Supreme Court nor [Ninth Circuit] Court[s] ha[ve] given much weight to the inconvenience to the plaintiff." *Ziegler*, 64 F.3d at 476 (citing *Core-Vent*, 11 F.3d at 1490). Therefore, California is not particularly important to Plaintiff's claims, particularly where an alternative forum exists. Specifically, in considering the seventh factor, Plaintiff can obtain same relief in New Jersey should she wish to continue her Quixotic quest to attach liability to a host of individuals and entities who did not engage in any sales transactions with her.

Overall, weighing all of the factors, this Court should conclude that it would be unreasonable to exercise its jurisdiction over the Individual and Non-Selling Entity Defendants in this case as the majority of factors weigh decidedly in Defendants' favor.

### 4. The Individual and Non-Selling Entity Defendants Are Protected By the Fiduciary Shield Doctrine

Additionally, the fiduciary shield doctrine further precludes a finding that the Individual and Non-Selling Entity Defendants are subject to personal jurisdiction in California. "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prod.*, 885 F.2d 515, 520 (9th Cir. 1989). As set forth above, Natural Beauty is the only entity who advertised, sold, or billed Plaintiff for the products. While Plaintiff contends that Barone and Chumenko are principals of Natural Beauty, this alone is insufficient to sustain personal jurisdiction against them as merely being an officer of a corporation is insufficient to permit California to assert jurisdiction over them.

The remaining Defendants, other than Barone and Chumenko, are even more disconnected from Natural Beauty, and thus are even more clearly protected by the fiduciary shield doctrine. Specifically, Ellis is not an owner of Natural Beauty nor is he a manager, director, officer, executive, employee, agent, or representative of Natural Beauty. *See* Barone Decl. ¶ 9, Chumenko Decl. ¶ 9, and Ellis Decl. ¶ 5. Furthermore, none of the Non-Selling Entity Defendants are a parent, subsidiary, or affiliated company of Natural Beauty. *See* Barone Decl. ¶ 9, Chumenko Decl. ¶ 9, and Ellis Decl. ¶ 10. Notwithstanding that even if such a relationship existed, the

fiduciary shield doctrine still would operate to preclude liability as the absence of any identifiable

relationship to Natural Beauty absolutely precludes Ellis and the Non-Selling Entity Defendants

from being subject to jurisdiction in California as a result of Natural Beauty's alleged conduct.

* * *

Each of the above reasons—the lack of general jurisdiction contacts, the lack of specific

jurisdiction contacts, the lack of fair play and substantial justice, and the fiduciary shield

doctrine—alone confirms that Plaintiff has entirely failed to meet her burden of establishing

personal jurisdiction over any of the Individual and Non-Selling Entity Defendants. When viewed

in the aggregate, moreover, they unequivocally compel dismissal pursuant to Rule 12(b)(2).

## VI. PLAINTIFF FAILS TO STATE A CLAIM AGAINST SFLG AND ELLIS

Plaintiff fails to state a claim against SFLG as the common carrier shipper of the

products—and Ellis as SFLG's principal—because (i) common carriers are not responsible for the

products they ship as a matter of law, and (ii) all of Plaintiff's claims are insufficiently pled as to

SFLG and Ellis. Indeed, Plaintiff does not complain that the products were improperly shipped,

merely that the fully disclosed method of sale was allegedly fraudulent.

### A. SFLG is a Common Carrier

Plaintiff *admits* that neither SFLG nor Ellis had anything to do with the sale of the

products in question and that all of Plaintiff's claims relate solely to the marketing and sale of the

products, not their shipping. Thus, Plaintiff's claims against SFLG (and its owner, who should not

have been named in any event) must be dismissed because SFLG is merely a common carrier not

subject to liability as a matter of law.

"The Carmack Amendment is a federal statute that provides the exclusive cause of action

for interstate shipping contract claims, and it completely preempts state law claims…" *White v.

Mayflower Transit, LLC*, 543 F.3d 581, 584 (9th Cir. 2008). "[T]he Carmack Amendment

constitutes a complete defense to common law claims alleging all manner of harms…appl[ying]

equally to fraud…arising from a carrier's misrepresentations..." *Shabani v. Classic Design Servs.,

Inc.*, 699 F. Supp. 2d 1138, 1141 (C.D. Cal. 2010). In *Hall v. North American Van Lines, Inc.*, the

Court concluded that plaintiff's state law claims for fraudulent practices by the shipper defendant

2783.000/1509906.2                    20                    Case No. 4:20-cv-00761-EMC

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

were completely preempted by the Carmack Amendment. 476 F.3d 683, 687-89 (9th Cir. 2007). Similarly, the Court in *Shabani*, held that it was irrelevant that plaintiff attempted to distinguish its fraud claims against the carrier as independent from any damage to the shipped goods because the Carmack Amendment is so expansive "that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it." 699 F. Supp. 2d at 1141-42 ("[t]hough [p]laintiff's fraud claim appears to arise from events other than the alleged loss or damage to his property, courts have acknowledged that the preemptive effect of the Carmack Amendment applies equally to claims of fraud…")

Here, Plaintiff ***admits*** that SFLG and Ellis merely "shipped the Nuvega Products to consumers" and received the mailings for customer complaints and returns. *See* Complaint ¶ 207. Plaintiff does not allege any damages resulting from the shipment of the products or the return process for the products anywhere in the Complaint. Plaintiff also does not allege that Ellis or SFLG participated in the marketing or sale of the products in question. Thus, Plaintiff admits that SFLG is merely a common carrier against whom liability cannot lie as a matter of law.

Indeed, taking Plaintiff's claims to their illogical conclusion, if a consumer orders a widget from Wal-Mart and is charged twice for that widget, the consumer could assert a host of statutory and common law fraud claims against the U.S. Post Office which shipped the widget even though it had absolutely no control over the means and method of sale. This is plainly not the law and Courts routinely dismiss complaints against common carriers where only state or common law claims are alleged. *See, e.g., Shabani*, 699 F.Supp.2d at 1142; *see also White v. Mayflower Transit, LLC*, 481 F. Supp. 2d 1101, 1109-10 (2007) (dismissing pre-empted claims with prejudice).

### B.    Plaintiff Fails to Plead Fraud With Particularity or Plead a Plausible Claim

In the remarkable event that the Court finds that Plaintiff's claims against SFLG and Ellis are not pre-empted, Plaintiff's claims are insufficiently pled requiring dismissal. All of Plaintiff's claim sound in fraud and, furthermore, her allegations attaching liability to Ellis and SFLG for the conduct of the remaining Defendants—such as aiding and abetting—sound in fraud as well. *See* Complaint. Pursuant to Rule 9(b), '[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Under Ninth Circuit law, a pleading is sufficient for purposes of Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer. While conclusory allegations will not suffice, statements which provide the time, place and nature of the alleged fraudulent activities will." *Zatkin v. Primuth*, 551 F .Supp. 39, 42 (S.D. Cal 1982). "Allegations of fraud based on information and belief usually do not satisfy the degree of particularity required under Rule 9(b)." *Id.* at 42. Allegations made on information and belief for a fraud claim must still "state the factual basis for belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (holding that pleading "suspicious circumstances" does not sufficiently meet the Rule 9(b) standard when the plaintiff fails to plead the tortfeasor's role in the fraudulent scheme with particularly).

Plaintiff did not properly plead her claims against SFLG and Ellis because there are nothing more than a few "information and belief" allegations without the requisite detail. For instance, Plaintiff alleges that "on information and belief [SFLG and Ellis] provided other services including consulting on business processes and generally assisting the scheme" and "[o]n information and belief, Defendants Ellis and SFLG, Inc. were well aware that the Barone/Chumenko Defendants were operating a "free trial" scam…." *See* Complaint ¶¶ 207 and 211. Indeed, all of the allegations involving SFLG and Ellis's connection to the alleged scheme are made on nothing more than wholly speculative "information and belief." *See* Complaint. These threadbare allegation cannot meet the heightened pleading standard necessary to establish fraud compelling dismissal of all claims against SFLG and Ellis as insufficiently pled. Furthermore, these "information and belief" claims cannot sustain claims against a mere shipping entity—especially fraud claims requiring particularized pleading under Rule 9(b)—when Plaintiff admits they are not the real party in interest nor engaged in any of the alleged fraudulent conduct. Here, SFLG was merely a common carrier who shipped products for Natural Beauty and does not advertise or sell any products to consumers. *See* Ellis Decl. ¶¶ 11-13 and 19. Plaintiff's position is akin to a declaration that all shippers can be on the hook for the conduct of their retailer customers if a plaintiff merely alleges—solely on information belief—a fictitious special

relationship between the shipper and retailer without a single fact to support that contention. In

the absence of any "plausible" allegations—never mind the absence of any allegations satisfying

Rule 9(b)—Plaintiff's claims fail as a matter of law compelling the dismissal of Defendants Ellis

and SFLG. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (requiring a claimant to set forth

facts sufficient to "nudge[] [their] claims" . . . "across the line from conceivable to plausible." *Id.*

at 680 (citing *Twombly*, 550 U.S. at 570).

## VII. DISMISSAL OF NATIONWIDE CLASS CLAIMS AS THEY PERTAIN TO THE CALIFORNIA CONSUMER PROTECTION STATUTES IS APPROPRIATE AS TO THE NON-CALIFORNIA CLASS MEMBERS

It is now clear that the California Unfair Competition Law does not apply to non-

California residents for conduct occurring outside of California. *See Norwest Mortg., Inc. v.*

*Sup.Ct.,* 72 Cal. 4th 214, 222 (1999):

> We ordinarily presume the Legislature did not intend the statutes of this
> state to have force or operation beyond the boundaries of the state. (*North
> Alaska Salmon Co. v. Pillsbury* (1916) 174 Cal. 1, 4, 162 P. 93; *People v.
> One* 1953 Ford Victoria (1957) 48 Cal.2d 595, 598–599, 311 P.2d 480.)
> Accordingly, we do not construe a statute as regulating occurrences outside
> the state unless a contrary intention is clearly expressed or reasonably can be
> inferred from the language or purpose of the statute. (*Diamond Multimedia
> Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1058–1059, 80
> Cal.Rptr.2d 828, 968 P.2d 539.

The Court then pointed out that there was no express declaration and nothing in the statute that

supported a contrary intention. *Id.* at 23-24. The same is true of the California Legal Remedies

Act, False Advertising Law, and Automatic Renewal Law. There is no express provision applying

those laws outside of California. Accordingly, they do not apply to non-California residents to

conduct occurring outside of California.

The gist of plaintiff's claim is the purported misrepresentations and statements that were

contained on Internet websites. As Plaintiff concedes in her pleading, those misrepresentations

occur in the states where the purported victim resides; here, California. Should there be any doubt

that the focus of the lawsuit is on California residents, paragraphs 193 through 198 of the

Complaint assert that Defendants targeted California residents. *See* Complaint ¶ 194 ("the

intentional acts were expressly aimed at California residents"; defendants "targeted their conduct

at California residents"). While Defendants dispute that these conclusory allegations are sufficient

1 to sustain personal jurisdiction against any Defendant beyond Natural Beauty, if the Court accepts

2 them as true the allegations do not permit non-residents to claim redress in California for acts

3 allegedly targeting or aimed at them in their home states as Plaintiff admits in her Complaint.

4 Since non-California residents cannot have claims based on statutes that are not expressly enacted

5 to protect non-residents, no claim for relief can be stated on their behalf and it is appropriate to

6 dismiss those nationwide class claims as a matter of law pursuant to Rule 12(b)(6).

7 **VIII.  CONCLUSION**

8       Based on the foregoing, Defendants respectfully request that the Court dismiss the

9 Complaint with prejudice for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P.

10 12(b)(1), or, in the alternative, dismiss the Complaint with prejudice as to the Individual

11 Defendants and Non-Selling Entity Defendants for lack of personal jurisdiction pursuant to

12 Fed. R. Civ. P. 12(b)(2), or, in the alternative, dismiss the Complaint with prejudice as to

13 Defendants SFLG and Ellis for failing to state a claim upon which relief can be granted pursuant

14 to Fed. R. Civ. P. 12(b)(6), and dismiss the nationwide class claims for non-California residents

15 with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), and grant such other, further, and additional

16 relief as the Court deems just and proper, including an award of reasonable attorneys' fees and

17 costs.

18 DATED:  April 30, 2020                BARTKO ZANKEL BUNZEL & MILLER
19                                  A Professional Law Corporation

20

21                          By: _____

22                               Charles G. Miller
                              Attorneys for Defendants FRANK V. BARONE;

23                               KIRILL CHUMENKO; GREEN POGO LLC
                              (DELAWARE); GREEN POGO LLC (NEW

24                               JERSEY); NATURAL BEAUTY LINE LLC;
                              VEGAN BEAUTY LLC; IMPROVED

25                               NUTRACEUTICALS LLC; FORTERA NUTRA
                              SOLUTIONS LLC; ADVANCED BEAUTY

26                               LLC; SFLG INC.; and KURT ELLIS

27

28

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# ATTESTATION OF E-FILER

In compliance with Local Rule 5-1(i), the undersigned ECF user filing this document, hereby attests that all signatories of this document have concurred in the filing of this document.

_____
Charles G. Miller

2783.000/1509906.2

25

Case No. 4:20-cv-00761-EMC

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b) (1), (2), and (6);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF