UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY ADAM,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FRANK V. BARONE, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-00761-EMC<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. SECTION 1404(a) OR, IN THE ALTERNATIVE, TO DISMISS**<br><br>Docket Nos. 35, 38 |

## I. INTRODUCTION

This lawsuit pertains to an alleged fraudulent scheme in which beauty products are advertised as "free samples," but consumers are later inconspicuously charged for monthly subscriptions. Plaintiff Cindy Adam filed the operative First Amended Complaint (Docket No. 33, "FAC") against the following defendants: Frank V. Barone, Kirill Chumenko, Green Pogo LLC (Delaware), Green Pogo LLC (New Jersey), Fortera Nutra Solutions LLC, Improved Nutraceuticals LLC, Natural Beauty Line LLC., Vegan Beauty LLC, Advanced Beauty LLC, Kurt Ellis, and SFLG Inc. (collectively, "Defendants"). Pending before the Court is Defendants' motion to transfer venue pursuant to 28 U.S.C. Section 1404(a), or, in the alternative, to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (2) and (6). Docket No. 35 ("Mot.").

## II. BACKGROUND

A. <u>Factual Background</u>

The FAC alleges as follows. In 2017, Ms. Adam, a California resident, saw an advertisement on Snapchat (a social media application) for a product called "Nuvega Lash." FAC ¶ 42. The advertisement claimed the product was endorsed by a celebrity named Blac Chyna, although Ms. Chyna has never actually endorsed Nuvega Lash. *Id*. ¶¶ 42, 44. Ms. Adam clicked

on the advertisement, which brought her to a website (later described as a hidden landing page) showing five-star reviews of Nuvega Lash. *Id.* ¶ 43. This website was owned and operated by Fortera Nutra Solutions. *Id.* ¶ 56. Ms. Adam purchased two "free samples" from that website, as well as another product that cost $15. *Id.* ¶ 45. Her credit card was charged three times that same day.[1] *Id.* ¶ 46.

A few weeks later, Ms. Adam's credit card was charged $94.97,[2] but this charge was ultimately reversed. *Id.* ¶ 47. Two days later, Ms. Adam's credit card was charged $92.94, described as: "Recurring Card Purchase 09/07 Nuveganlashes 800-771-6369 NJ." *Id.* ¶ 48. Because the charge was unexpected, Ms. Adam had insufficient funds and incurred a fee by her bank of $34.00. *Id.* The $92.94 charge was temporarily reversed until it was reinstated after an investigation by her bank. *Id.* ¶¶ 49–50. The complaint alleges that one or more of Defendants reached out to her bank and made false statements—*i.e.*, that Ms. Adam agreed to the subscription. *Id.* ¶ 50. Three products were ultimately shipped to Ms. Adam in California. *Id.* ¶ 45.

Ms. Adam contacted Nuvega Lash directly and spoke with a representative. *Id.* ¶ 54. The representative informed Ms. Adam that when she purchased the products, Ms. Adam agreed to pay the subscription if she kept the "free samples." *Id.* However, the representative thereafter offered Ms. Adam a refund if she returned the products. *Id.* Ms. Adam did not return the products because she "did not trust the company which had just fraudulently charged her credit card without consent[.]" *Id.*

The FAC alleges Defendants' fraudulent scheme operates as follows. The advertisements (such as the one Ms. Adam saw) funnel consumers to hidden landing pages that are inaccessible or deleted after a short time to avoid detection. *Id.* ¶ 64. On these hidden landing pages, where consumers purchase their products, there is no disclosure to customers that they are agreeing to a subscription, and the terms are either buried or hidden. *Id.* ¶¶ 10, 79.

---

[1] The charges were as follows: (1) $4.99 described as "08/23 Advancedlash8007848531 800-8748531 NJ," (2) $4.95 described as "08/22 Nuveganlashes 800-771-6369 NJ," and (3) $14.99 described as "08/22 Nuveganbrows 800-577-7806 NJ." *Id.* ¶ 46.

[2] This charge was described as "09/06 Advancedlash8007848531 800-8748531 NJ."

1    Defendants Mr. Barone and Mr. Chumenko operate shell companies that run "false front"
2    websites on which the subscription disclosures are clear and prominent. *Id*. ¶¶ 91–96. The
3    operation of the "false front" websites makes it more difficult for banks to identify Nuvega Lash's
4    operation as a fraudulent scheme because these "false front" websites (as opposed to the hidden
5    landing pages that expire after a short period of time) are presented to customers' banks whenever
6    a chargeback is investigated. *Id*. ¶¶ 101, 116. One of these "false front" websites was deceptively
7    shown to Ms. Adam's bank to show that she agreed to a recurring subscription. *Id*. ¶ 288. Some
8    of these alleged "false front" websites were operated by Natural Beauty at Mr. Chumenko's home
9    address in New Jersey and were registered by an employee of Fortera Nutra Solutions. *Id*. ¶ 104.
10   Other "false front" websites used to deceive banks were operated by Green Pogo and Improved
11   Nutraceuticals at Mr. Barone's home address in New Jersey. *Id*. ¶¶ 104–08.

12   In addition to operating "false front" websites, the FAC alleges that the defendant shell
13   corporations also rotated their merchant accounts among Nuvega Lash customers using a "load
14   balancer" software. *Id*. ¶ 57. When a consumer was billed for a Nuvega Product, the software
15   selected a merchant account from among the defendant corporations, depending on the current
16   level of chargebacks associated with the account. *Id*. This prevented detection of the fraud by
17   spreading chargebacks among different accounts and limiting the chargebacks associated with
18   each account. *Id*.

19   The complaint also asserts that the fulfillment service—SFLG Inc., which is operated by
20   Mr. Ellis—is involved in the scheme. SFLG handled the shipping of Nuvega Lash products and is
21   listed as the "Return Department" on the "false front" websites. *Id*. ¶ 210. SFLG and Mr. Ellis
22   allegedly knew of the "scam" because they handled consumer reviews and complaints. *Id*. ¶ 233.
23   SFLG and Mr. Ellis committed intentional acts by shipping products to California residents,
24   accepting and processing returns from California residents, and otherwise providing services listed
25   on their website in connection with California customers. *Id*. ¶ 242. Mr. Ellis and SFLG derived
26   substantial profit from these activities. *Id*.

27   None of the Defendants are residents of California. Neither of the corporate Defendants
28   are incorporated in California or have physical operations in California. *Id*. ¶¶ 15–25. All of

3

Defendants' employees are located in New Jersey. SFLG has no employees. Mot. at 5. Mr. Barone and Mr. Chumenko reside exclusively in New Jersey and do not own property in California. Mr. Ellis resides exclusively in Maine and does not own property in California. *Id*. at 4.

B.   Procedural Background

The FAC was filed on May 5, 2020 and alleges the following causes of action: (1) violation of California's Consumer Legal Remedies Act; (2) violation of California's False Advertising Law; (3) violation of the unfair and fraudulent prongs of California's Unfair Competition Law; (4) violation of the unlawful prong of California's Unfair Competition Law; (5) violation of California's Automatic Renewal Law; (6) violation of the Electronic Fund Transfer Act; (7) civil Racketeer Influenced and Corrupt Organizations Act; (8) violation of various consumer protection laws; (9) aiding and abetting; and (10) conspiracy. Docket No. 33. Defendants filed the pending motion to dismiss or, in the alternative, transfer venue, on June 15, 2020. Docket No. 35.[3] The parties proffered arguments before the Court on July 30, 2020. Docket No. 47.

### III.   MOTION TO TRANSFER

Defendants seek a transfer of venue to a district court in New Jersey because it alleges that all the witnesses and evidence are located in New Jersey, and New Jersey is the only forum in which all the Defendants are subject to personal jurisdiction. Ms. Adam objects to a transfer, and she argues it would be improper.

A.   Legal Standard

Under 28 U.S.C. section 1404(a), a court may transfer a case to another district where it might have been brought. "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Mainstay Bus. Sols. v. Indus. Staffing Servs.*, 2012 WL 44643, at *1 (E.D. Cal. Jan 9, 2012) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964)). A court considering a motion to transfer venue must determine

---

[3] Defendants' reply brief is, however, styled as motion to transfer venue or, in the alternative, to dismiss. *See* Docket No. 50 ("Reply").

4

whether venue is proper in this district; whether plaintiff could have brought the action in the transferee district; and whether the transfer will promote convenience and fairness. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Hoffman v. Bilaski*, 363 U.S. 335, 343–44 (1960).

B.     Discussion

Defendants request the Court transfer this matter to a federal court in New Jersey. In support of their position, they argue that Ms. Adam could have brought this action in New Jersey. They also contend that all the factors regarding fairness and convenience weigh in favor of a transfer. Ms. Adam challenges Defendants' request for a transfer by arguing that personal jurisdiction in New Jersey is improper against SFLG and Mr. Ellis, so Ms. Adam could not have originally brought an action against them in New Jersey. She also contends the balancing of factors weighs against a transfer.

Absent an allegation that venue in this District is improper—no such allegation exists here—district courts engage in a two-step analysis for motions to transfer. First, they determine "whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman*, 363 U.S. at 343–44 (quoting 28 U.S.C. § 1404(a)). The second step requires the Court to engage in an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org*, 487 U.S. at 29 (quoting *Van Dusen*, 376 U.S. at 622). Courts consider the following factors when determining convenience and fairness:  (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum. *See, e.g.*, *Perez v. Performance Food Grp., Inc.*, No. 15-cv-02390-HSG, 2017 WL 66874, at *2 (N.D. Cal. Jan. 6, 2017); *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at *2 (N.D. Cal. Feb. 14, 2014); *Wilson v. Walgreen Co.*, No. C-11-2930 EMC, 2011 WL 4345079, at *2 (N.D. Cal. Sept. 14, 2011). This Court analyzes the two prongs below.

1.     Ms. Adam's Ability to File in New Jersey

Regarding the first prong, the parties do not dispute that Ms. Adam would have been able

to bring her claims against Mr. Barone, Mr. Chumenko, and the alleged "shell company" defendants in New Jersey. However, Ms. Adam argues that, at the time of filing this lawsuit, New Jersey could not exercise personal jurisdiction over SFLG and Mr. Ellis. In response, Defendants make two arguments in support of personal jurisdiction in New Jersey. For the reasons explained below, the Court is unpersuaded.

First, Defendants contend that SFLG and Mr. Ellis both expressly consent to personal jurisdiction in New Jersey despite both being from Maine. Docket No. 43 at 6. However, this concession does not satisfy Defendants' burden in meeting the first prong. Post-lawsuit consent is not relevant for the venue-transfer analysis because jurisdiction is determined at the time of filing the lawsuit, and "an action must have been capable of having been brought in the transferee district by the plaintiff ***independently of the wishes of the defendant***." *Hoffman*, 363 U.S. at 386 (emphasis added); *see A. J. Indus., Inc. v. United States Dist. Court for Cent. Dist.*, 503 F.2d 384, 386 (9th Cir. 1974) ("the posture of the case at the time of filing in the transferor district is determinative of whether the action was one which 'might have been brought' in the proposed transferee district."). Thus, the Court does not end its inquiry with Defendants' post-filing consent.

Second, the Court is not convinced that New Jersey would have been able to exercise general jurisdiction[4] over SFLG and Mr. Ellis at the time of this lawsuit's filing. At the hearing, defense counsel contended that this is satisfied because of SFLG and Mr. Ellis's minimum contacts with the state of New Jersey. This is not the law on general jurisdiction. General jurisdiction exists only where a defendant's contacts with a forum are so continuous and systematic as to render them essentially at home in the forum state; continuous activity of some sorts within a state is not by itself enough to support general jurisdiction. *Goodyear Dunlop Tires*

---

[4] Defendants' motion only argues that the exercise of general jurisdiction in New Jersey would be appropriate against SFLG and Mr. Ellis—they did not make a specific jurisdiction argument. After the hearing, this Court ordered the parties to file a letter brief with supplemental authorities analyzing the requirement that the transferee court must have had personal jurisdiction over ***all*** defendants. The Court expressly indicated that the supplemental filing must not contain additional argument. In Defendants' filing, however, they argue—for the first time—that a New Jersey court can exercise specific jurisdiction over SFLG and Mr. Ellis. Because this issue is beyond the scope of the permitted filing, this Court will not consider Defendants' newly-raised argument.

1  *Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  For corporations, the paradigm all-purpose
2  forums for general jurisdiction are (1) its place of incorporation and (2) its principal place of
3  business.  *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).  Only in an exceptional case, where
4  a corporation's operations in a forum are so substantial and of such a nature as to render the
5  corporation at home in that forum, will general jurisdiction be available anywhere else.  *Martinez*
6  *v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (citing *Daimler*, 571 U.S. at 139 n.19).
7  The standard for establishing the exceptional case for general jurisdiction is high for obvious
8  reasons:  a defendant subject to general jurisdiction in a forum state will always be liable for
9  lawsuits in that forum, irrespective of whether the lawsuit arises out of those contacts.  *See Ranza*
10 *v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (despite facts demonstrating that NEON sent
11 employees to work out of Oregon, conducted business meetings in Oregon, and sold products in
12 stores in Oregon, these business contacts were not "so continuous and systematic as to render [the
13 corporation] essentially at home in the forum State.") (quoting *Daimler*, 571 U.S. at 761).

14  SFLG is not incorporated in New Jersey, nor does it have its principle place of business
15 there.  Mr. Ellis is not domiciled in New Jersey.  Defendants attempt to establish general
16 jurisdiction by asserting that Mr. Ellis's and SFLG's alleged involvement in the conspiracy, which
17 was centered in New Jersey, rendered them "at home" there.  However, like *Ranza*, these repeated
18 business interactions do not meet the high standard of the "exceptional case" to establish general
19 jurisdiction.  *See Ranza*, 793 F.3d at 1070.  In fact, the claims about Mr. Ellis and SFLG's
20 activities in New Jersey are even weaker than the facts in *Ranza*, as there are no allegations that
21 they sent employees or products to New Jersey.

22  Thus, the Court concludes that this lawsuit may not have appropriately been brought in
23 New Jersey against all Defendants.  The overwhelming authority suggests that in suits against
24 multiple defendants, transfer is proper only to a district in which ***all*** are subject to personal
25 jurisdiction.[5]  However, in situations where a case could have been brought against some but not

---

[5] *See* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3854 (4th ed. 2008); *see Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28 (3d Cir. 1993) (vacating transfer where one of two Defendants was not subject to personal jurisdiction in transferee court); *accord Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1545 (10th Cir. 1996) (transfer

all of the defendants in the transferee district, Section 1404 permits the Court to sever and transfer the claims against those defendants while retaining the claims against the remaining defendants for whom transfer would not be proper. *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009); *see also White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144 (3d Cir. 1999) ("Nothing within § 1404 prohibits a court from severing claims against some defendants from those against others and transferring the severed claims."); *accord Wyndham Associates v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) ("[W]here the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims against one or more defendants for the purpose of permitting transfer of the action against the other defendants").

Given its discretion to retain venue over Mr. Ellis and SFLG in the event that severance and transfer is in the interest of convenience and fairness, the Court will balance the factors of the second prong in the Section 1404(a) analysis as applied to the New Jersey defendants.

2. Convenience and Fairness of Litigating in New Jersey

Transferring to New Jersey is only appropriate if it would be in the interest of convenience and fairness. *See Stewart Org., Inc.*, 487 U.S. at 29 ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."). The Ninth Circuit has held that, in general, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

a. Ms. Adam's Choice of Forum

Ms. Adam argues that her choice of forum is entitled to great deference because she selected her home forum. Moreover, she contends that this is the forum where the sale took place, the bank overcharge occurred, the advertisements were viewed, and her bank account is located. *Id*. Defendants urge this Court give no weight to Ms. Adam's choice of forum because she seeks to represent a nationwide class.

---

inappropriate where one of multiple defendants lacked personal jurisdiction in transferee court).

8

"Although great weight is generally accorded [to] plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (internal citation omitted). In response to this issue, Ms. Adam relies on *Sonoda v. Amerisave Mortgage Corporation*, where this Court found that the named class plaintiff's decision to file in N.D. Cal. was "not purely fortuitous" because (1) the plaintiff resided in this District; (2) the defendant made its website available to California residents, and the defendant allowed the plaintiff to apply for a mortgage online, thereby giving rise to contacts with California; and (3) although the plaintiff sought to represent a nationwide class, he also sought to represent a California subclass. *Sonoda v. Amerisave Mortg. Corp.*, No. C-11-1803 EMC, 2011 WL 2653565, at *4 (N.D. Cal. July 6, 2011). In so finding, this Court distinguished *Italian Colors Restaurant v. American Express Company.*, No. C 03–3719 SI, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003)—a case on which Defendants rely for their proposition that Ms. Adam's place of residence has no weight because she can be replaced as the named plaintiff by an individual from any other district in the nation. This Court found that *Italian Colors* was distinguishable because it contained clear evidence of forum shopping[6] by the plaintiffs. *Sonoda*, WL 2653565 at 5. Moreover, the existence of a California subclass in *Sonoda* meant that the plaintiffs' choice of California was "accorded some deference." *Id*. at 4. As this Court held in *Hansell v. TracFone Wireless*, Inc., No. C-13-3440 EMC, 2013 WL 6155618, at *3 (N.D. Cal. Nov. 22, 2013), "some presumptive weight" may be afforded to the plaintiffs' choice of forum because they relied on the defendant's advertisements in California.

Unlike in *Italian Colors*, Defendants here do not allege that Ms. Adam is forum shopping. Ms. Adam seeks to represent a California subclass,[7] like the plaintiffs in *Sonoda*, and she viewed advertisements while in this state, like the plaintiffs in *Hansell*. The Court therefore finds that

---

[6] *See Italian Colors*, 2003 WL 22682482 at 4 (noting that "[o]ne could rationally infer forum shopping here, based on plaintiffs' repeated filing [basically in New York, then in the Central District of California, and then in the Northern District of California] and plaintiffs' admitted perceptions that California provides a more favorable rule of decision").

[7] "**California Class**: All consumers in the United States who, within the applicable statute of limitations period until the date notice is disseminated, were billed for the Nuvega Products." FAC ¶ 249 (emphasis added).

9

1 some deference is afforded to Ms. Adam's choice of forum and weighs this factor slightly against
2 transfer.

        b. <u>Convenience of the Parties, Witnesses, and Ease of Access to Evidence</u>

  These three factors generally weigh in favor of transfer. The vast majority of Defendants are in New Jersey, with the remaining two (*e.g.*, SFLG and Mr. Ellis) being from Maine.

  With regard to convenience of witnesses, less weight is given to the inconvenience of party witnesses; rather, the focus is the convenience of non-party witnesses who would be subject to this Court's subpoena power. *See United States v. Acad. Mortg. Corp.*, No. 16-CV-02120-EMC, 2018 WL 4053484, at *5 (N.D. Cal. Aug. 24, 2018) ("Courts give less consideration to the convenience of party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur."). Ms. Adam takes issue with Defendants' failure to identify any non-party witnesses, despite their general claim that third-party vendors exist. She also maintains that these third-party vendors may become parties to this action as Doe defendants if they were complicit in the scam.

  Given the contested personal jurisdiction issues in this case, it is not clear which Defendants would be party witnesses. Defendants have disputed this Court's ability to exercise personal jurisdiction over everyone except Natural Beauty. Thus, if personal jurisdiction is only proper against Natural Beauty, the remaining Defendants will cease to be party witnesses, which would shift the analysis by making litigation in New Jersey more convenient. If the Court accepts Ms. Adam's alter ego theory for personal jurisdiction, these witnesses would remain party witnesses, but the Court cannot at this juncture adjudicate the alter ego theory as it is fact-based. There is therefore a risk that many of these witnesses will ultimately be deemed non-party witnesses. Moreover, to the extent that Ms. Adam seeks to add any third-party vendors as defendants to this lawsuit, it would further tip the scale in favor of transfer because Defendants alleges their website-servicing vendors are all located in New Jersey.

  The convenience of access to evidence also favor transfer but only slightly so because, although Defendants' records are in paper format, digitalization of evidence would likely not be so overly burdensome with today's technology. *See Van Slyke v. Capital One Bank*, 503 F. Supp. 2d

1353, 1362 (N.D. Cal. 2007) ("With technological advances in document storage and retrieval, transporting documents does not generally create a burden.").

### c. Familiarity of Each Forum with the Applicable Law

Ms. Adam argues that because she asserts a California Unfair Competition Law claim, "[a] California court would be more familiar with this law and better suited to conduct such a trial." Opp. at 7. However, this Court is a federal court that happens to sit in California by diversity jurisdiction, and "judges in each jurisdiction are fully capable of deciding issues arising under . . . California . . . law." *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009). A judge in New Jersey would be fully competent to decide the issues at stake. Furthermore, given that the bulk of the alleged fraudulent activities took place in New Jersey, there is a reasonable argument that a choice-of-law analysis might require that New Jersey applies. If so, this Court is certainly not more familiar with New Jersey law than the district court in New Jersey.

### d. Feasibility of Consolidation with Other Claims

This factor weighs in New Jersey's favor because as discussed below, this Court does not appear to have personal jurisdiction over Mr. Ellis and SFLG whereas those defendants have consented to jurisdiction of the New Jersey district court. All Defendants could thus appear in one proceeding therein.

### e. Any Local Interest in the Controversy

Ms. Adam argues that because she is asserting California's Automatic Renewal Law, *inter alia*, on behalf of a California subclass, *see* FAC ¶¶ 105–107, it follows that California has an interest in protecting its citizens from consumer fraud. Opp. at 7. The California lawmakers have indeed made their interests clear: "[i]t is the intent of the [California] Legislature to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipment of a product . . . ." Cal. Bus. & Prof. Code § 17600. However, as articulated in Section c, *supra*, a district judge in New Jersey can likely protect California's interests, especially when those interests are made expressly clear by Section 17600. Furthermore, the same choice-of-law concerns make California's interest in

11

this litigation uncertain; if a New Jersey law governs, California's interest in resolving the controversy is significantly less compelling. Indeed, New Jersey has an interest in regulating the conduct of residents and businesses located there.

### f. The Relative Court Congestion and Time to Trial in Each Forum

Both parties submit statistics regarding this District's docket compared to that of New Jersey. According to Defendants, the average time from filing to disposition in the Northern District of California is only 1.2 months greater than the District Court of New Jersey, and 16.1% of cases in this District are more than three years old. Ms. Adam's data show that the average time to trial in this District is 22 months, as opposed to the 40.8-month average in New Jersey. Moreover, as Ms. Adam represents, there are 896 pending cases per judge in this District, and 2,379 per judge in New Jersey.

At least one court from this District has outright refused to balance this factor either way. *See e.g.*, *Perez v. Performance Food Grp., Inc.*, No. 15-CV-02390-HSG, 2017 WL 66874, at *2 (N.D. Cal. Jan. 6, 2017) ("The Court does not compare the court congestion and time of trial in the two districts because ongoing application of this doctrine could have the unintended consequence of penalizing efficiency by effectively placing more cases in the districts with the shortest time to trial. In addition, the Court is somewhat skeptical of the ability of the Court or the parties to accurately and meaningfully capture these metrics as of today, which is the only timeframe that matters for this purpose."). This Court agrees.

In sum, the factors weigh in favor of transfer. The evidence and witnesses, both party and non-party, are located primarily in New Jersey, and the New Jersey district court is the only court in which all Defendants can be consolidated. Defendants have made "*a strong showing of inconvenience* to warrant upsetting the plaintiff's choice of forum." *Decker*, 805 F.2d at 843. Transferring venue serves both fairness and convenience factors because it will allow Ms. Adam to pursue her claims in a court that may adequately and expeditiously address her claims without the Court first resolving jurisdictional disputes.

Accordingly, this Court exercises its discretion to sever for purposes of a motion to transfer. Specifically, the Court finds that transferring Ms. Adam's claims against Mr. Barone,

12

Mr. Chumenko, and the alleged shell corporations to New Jersey is in the interest of convenience and fairness. *See D'Jamoos*, 566 F.3d at 110; *see also Sinochem International Corporation v. Malaysia International Shipping Corporation* ("where personal jurisdiction is difficult to determine, and where *forum-non-conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course of dismissing under the doctrine of *forum non conveniens* without deciding whether the court has jurisdiction"), 549 U.S. 422, 425 (2007).

The Court therefore **GRANTS in part** Defendants' motion to transfer venue to the District of New Jersey as to Mr. Barone, Mr. Chumenko, Green Pogo LLC (Delaware), Green Pogo LLC (New Jersey), Natural Beauty Line LLC, Vegan Beauty LLC, Improved Nutraceuticals LLC, Fortera Nutra Solutions LLC, and Advanced Beauty LLC. SFLG and Mr. Ellis are severed, and Defendants' motion to transfer with respect to SFLG and Mr. Ellis is **DENIED**.

## IV.     MOTION TO DISMISS

Because this Court determines that Ms. Adam's claims against Mr. Ellis and SFLG cannot be transferred directly to New Jersey, it must address whether these two defendants are subject to personal jurisdiction in California. They are not.

A.     Legal Standard

A party may move for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-15(9th Cir. 2006). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a *prima facie* showing of jurisdictional facts.'" *Id*. (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Although the plaintiff cannot simply rest on the bare allegations of its complaint . . . uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks omitted). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id*. Although there was some dispute raised at the hearing about what the proper legal standard is for plaintiff's burden at this stage and how factual disputes should be resolved, the Court need not address these issues because even

13

resolving disputes in Ms. Adam's favor and applying the lower *prima facie* standard, Ms. Adam has not met her burden.

B. Discussion

Ms. Adam does not assert that Mr. Ellis and SFLG are subject to general jurisdiction in California. Instead, she claims there is specific jurisdiction over these two defendants because they committed intentional acts by shipping products to California residents and handled and complaints and returns on behalf of the other defendant companies. FAC ¶¶ 242-43.

Specific jurisdiction is appropriate when the following three prongs are satisfied: (1) the defendant purposefully directed activities or consummated some transaction with the forum or resident thereof, or purposefully availed himself privilege of conducting activities in forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Ms. Adam bears the burden of proving the first two prongs; if she does, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable. *Id*. Because Ms. Adam fails to put forth a *prima facie* case of specific jurisdiction, the Court need not determine whether exercising personal jurisdiction would be reasonable.

The purposeful direction framework requires Ms. Adam to show Mr. Ellis and SFLG (1) committed an intentional act; (2) expressly aimed at the forum state; and (3) that caused harm that the defendants knew was likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803. With respect to the first "intentional act" prong, Ms. Adam satisfies this prong by alleging that Mr. Ellis and SFLG acted intentionally when they shipped Ms. Adam her products, served as consultants for the other defendants, and acted as the fulfillment service for the alleged scheme. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (skipping over a detailed analysis of first prong when complaint alleged intentional wrongdoing).

Regarding the second prong, it is not clear from Ms. Adam's allegations that Mr. Ellis and SFLG "expressly aimed" their activities at California. Ms. Adam's primary argument is that they had access to her ZIP code, which, according to her, meant the they could foresee her suffering harm in California. However, foreign acts with foreseeable effects in the forum state alone cannot

14

satisfy this prong without showing "something more"—*i.e.*, a showing that the defendant intentionally directed activities or targeted individuals in the forum state. *Pakootas v Tech Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). Therefore, even if Mr. Ellis and SFLG knew that Ms. Adam would suffer harm in California by virtue of knowing her ZIP code and sending products to her in California, this knowledge alone does not satisfy the "express aiming" prong absent a showing that they specifically directed their activities to California or intentionally targeted individuals in California. *See Pebble Beach Co.*, 453 F.3d at 1157. After the Supreme Court's decision in *Walden v. Fiore*, this kind of injury to a forum resident is not sufficient to establish jurisdiction without more connection to the forum itself. *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1148 (9th Cir. 2017) ("Plaintiffs were required to make a *prima facie* showing that Defendants' alleged actions were directed at [the forum state], not just at individuals who reside there."); *Pelican Communs., Inc. v. Schneider*, No. C-14-4371 EMC, 2015 U.S. Dist. LEXIS 15485 at *7 (N.D. Cal. Feb. 6, 2015) (express aiming not established when defendant had mere contact with California resident, not California itself). As in *Walden,* Ms. Adam's injury was not tethered to California in any meaningful way.

Moreover, in the context of online websites and products shipped into the forum state, courts in this District have held that "a limited number of products shipped into a forum flowing from a defendant's online sales activity is ***insufficient*** to establish express aiming." *Adobe Sys. v. Nwubah*, No. 18-CV-06063-LHK, 2019 U.S. Dist. LEXIS 210948 at *21-22 (N.D. Cal. Dec. 5, 2019) (emphasis added); *Boschetto v. Hansing*, 539 F.3d 1011, 1014-16 (9th Cir. 2008) (holding that advertising and sale of one vehicle over the internet with the seller residing out of state but shipping the vehicle to California does not establish personal jurisdiction).[8] Although some Courts have found the express aiming prong is satisfied when defendants knowingly conduct

---

[8] *See also ThermoLife Int'l LLC v. NetNutri.com LLC*, No. 18-CV-04248-PHX-JJT, 2019 U.S. Dist. LEXIS 118966 (D. Ariz. July 17, 2019) (holding that "[a]lthough Defendant has sold some of its products to residents of Arizona" through a website, plaintiff still failed to show express aiming in the absence of "something more").

15

regular business with individuals in the forum state and repeatedly ship goods into the forum,[9] the instant case identifies only a single transaction in California and does not allege facts to support a claim that Mr. Ellis and SFLG conducted extensive, repeated business in California. There is no allegation that these Defendants targeted California consumers any more than those in any other state. Ms. Adam has failed to show that Mr. Ellis and SFLG expressly aimed their activities at California.

Because the express aiming prong is not satisfied, the Court cannot conclude that Mr. Ellis or SFLG purposefully directed their activities at California. Ms. Adam has therefore failed to establish a *prima facie* case of personal jurisdiction. The Court **GRANTS** Defendants' motion to dismiss Mr. Ellis and SFLG for lack of personal jurisdiction. The Court **DENIES** Ms. Adam's request for jurisdictional discovery because she does not clearly articulate what discovery is necessary or how she expects it to be fruitful. *See Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007) ("In order to obtain discovery on jurisdictional facts, the plaintiff must at least make a 'colorable' showing that the Court can exercise personal jurisdiction over the defendant.").

## V. CONCLUSION

Specifically, the Court rules as follows:

- Defendants' motion to transfer venue as to Mr. Barone, Mr. Chumenko, Green Pogo LLC (Delaware), Green Pogo LLC (New Jersey), Natural Beauty Line LLC, Vegan Beauty LLC, Improved Nutraceuticals LLC, Fortera Nutra Solutions LLC, and Advanced Beauty LLC to the District of New Jersey is **GRANTED**;
- Defendants' motion to transfer as to SFLG and Mr. Ellis is **DENIED**;
- Defendants' motion to dismiss SFLG and Mr. Ellis for lack of personal jurisdiction is **GRANTED**; Ms. Adam's request for leave to conduct jurisdictional discovery is

---

[9] *See Oakley, Inc. v. Donofrio*, No. SACV1202191CJCRNBX, 2013 U.S. Dist. LEXIS 198264 at *7 (C.D. Cal. June 14, 2013) (finding personal jurisdiction where the defendant actively conducted transactions with California residents, accepted payment from them, and shipped products to California residents); *Paramount Farms Int'l LLC v. R.A.W. Real & Wonderful, LLC*, No. CV 14-581 GAF (VBKX), 2014 U.S. Dist. LEXIS 201117 at *4 (C.D. Cal. Apr. 4, 2014) (finding personal jurisdiction where defendant sold 576 bags of products to distributors and consumers in California, where plaintiff was headquartered).

16

**DENIED**; and

- Defendants' motion to dismiss for lack of subject matter jurisdiction and motion to stay are **DENIED** as moot.

This order disposes of Docket Nos. 35 and 38. The Clerk is instructed to enter Judgment and close the case.

**IT IS SO ORDERED**.

Dated: August 10, 2020

_____
EDWARD M. CHEN
United States District Judge